IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALLEN G. SAOUD,**

    Petitioner,

v.               //     CIVIL ACTION NO. 1:16CV73
                        CRIMINAL ACTION NO. 1:12CR113
                            (Judge Keeley)

**UNITED STATES OF AMERICA,**

    Respondent.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 6]
AND DENYING AND DISMISSING § 2255 PETITION [DKT. NO. 1]**

Pending is the Motion for Relief Pursuant to 28 U.S.C. § 2255 ("Petition") filed by the petitioner, Allen G. Saoud ("Saoud"). The question presented is whether, under the Sixth Amendment and <u>United States v. Cronic</u>, 466 U.S. 648 (1984), the Court must presume that Saoud was prejudiced by the ineffective assistance of trial counsel because the grand jury returned a second superseding indictment eight days before his trial. Concluding that no such presumption obtains under the facts of this case, the Court **DENIES** the Petition and **DISMISSES** the case **WITH PREJUDICE** (Dkt. No. 1).

**I. BACKGROUND**

**A. Conviction and Sentencing**[1]

On December 4, 2012, a grand jury sitting in the Northern District of West Virginia returned a 23-count indictment against

---

[1] Unless otherwise indicated, citations to docket entries in this section refer to Criminal No. 1:12cr113, and citations to docket entries in the remainder of the Order refer to Civil No. 1:16cv73.

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 6]
AND DENYING AND DISMISSING § 2255 PETITION [DKT. NO. 1]**

Saoud, charging him with health care and bankruptcy fraud, among other offenses (Dkt. No. 1). In short, the indictment alleged that Saoud defrauded Medicare and Medicaid by concealing his involvement in medical practices that participated in federal health care programs, despite the fact that he previously had entered into a settlement agreement with the Government that forbade him from receiving payment from such programs. See id. On May 7, 2013, the grand jury returned a superseding indictment, which amended certain language in the original indictment but did not allege any additional violations (Dkt. No. 29). Saoud responded by asserting his right to a speedy trial and requesting that the case proceed to trial as scheduled on June 12, 2013 (Dkt. No. 33).

On June 4, 2013, however, the grand jury returned a second superseding indictment, which added eight new counts of health care fraud, in violation of 18 U.S.C. § 1347, and one new count of aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1) (Dkt. No. 56 at 8-11). The crux of the new charges was the allegation that Saoud had solicited Dr. Frank Swisher to be the laboratory director at his dermatology practice, which in turn submitted claims for laboratory services that falsely indicated they had been performed by Dr. Swisher. Id. Saoud moved to sever the additional counts based on undue prejudice under Fed. R. Crim.

P. 14(a) or, in the alternative, to continue the trial on the entire indictment (Dkt. No. 62).[2] Asserting that "[t]he bulk of the evidence" it would offer had been "disclosed to [Saoud] months ago," the Government opposed the motion because Saoud had failed to make the requisite "strong showing of prejudice" (Dkt. No. 64).

At the pretrial conference on June 7, 2013, the Government explained that the additional charges would be proven through the testimony of Dr. Frank Swisher - from whom it already had intended to elicit similar testimony regarding the original charges - as well as approximately 15 pages of billing records (Dkt. No. 194 at 13, 16-17). The Court thus denied Saoud's motion, finding he had failed to establish that any undue prejudice would result if trial proceeded as scheduled (Dkt. Nos. 71; 194 at 18). The Court explained in a subsequent order:

> A defendant seeking to sever charges has the burden of demonstrating a strong showing of prejudice. Here, Saoud failed to establish a strong showing of prejudice based on the additional charges being added shortly before trial. The new charges in the Second Superseding Indictment not only related to the existing charges in the original indictment, but they also occurred within

---

[2] Rule 14(a) provides that, "[i]f the joinder of offenses . . . for trial appears to prejudice a defendant . . . the court may order separate trials of counts." The Fourth Circuit reviews Rule 14 decisions for abuse of discretion and "will not reverse a denial of a motion to sever absent a showing of clear prejudice." United States v. Dinkins, 691 F.3d 358, 367-68 (4th Cir. 2012).

> the same time frame as the existing charges. Moreover, the issues presented were not complicated, nor did they require extensive preparation on the part of defense counsel in order to refute them at trial, as Saoud already possessed the relevant discovery material.

(Dkt. No. 191 at 3) (internal citation omitted).

On June 25, 2013, following a ten day jury trial, Saoud was convicted of thirteen counts of health care fraud, in violation of 18 U.S.C. § 1347; one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); one count of concealment of a health care matter, in violation of 18 U.S.C. § 1035(a)(1); one count of a corrupt endeavor to obstruct and impede the due administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a); five counts of bankruptcy fraud, in violation of 18 U.S.C. § 152(2); and one count of false statement to a federal agent, in violation of 18 U.S.C. § 1001(a)(3). Notably, the jury convicted Saoud of all nine additional counts included the second superseding indictment (Dkt. No. 106). On March 25, 2014, the Court sentenced Saoud to 99 months of imprisonment and imposed a $2,630,000 fine (Dkt. No. 170). The Court also imposed $339,817.50 of restitution and a forfeiture money judgment in the amount of $1,243,118.29 (Dkt. No. 240).

**B.  Direct Appeal**

On April 8, 2014, Saoud noticed his appeal to the Fourth Circuit Court of Appeals (Crim. No. 1:12cr113, Dkt. No. 183). As relevant to the pending Petition, Saoud argued that he had been unduly prejudiced when this Court denied his motion to sever or, in the alternative, continue the trial. More particularly, Saoud asserted that he "did not have adequate time to prepare a defense," "review the over 200,000 pages of discovery documents," "interview the witnesses contained in the additional nine counts," or "hire an expert" (Dkt. No. 5-1 at 24). As it did below, the Government argued that Saoud had not been prejudiced "because the new charges were related to the original charges, were not complex, and were largely based on previously disclosed discovery" (Dkt. No. 5-2 at 22).

At oral argument on appeal, Saoud's trial counsel repeatedly expressed that he had not been prepared to defend against the additional counts in the second superseding indictment (Dkt. No. 1 at 4-5). Nonetheless, on December 19, 2014, the court of appeals affirmed Saoud's conviction:

> [Saoud] does not explain, as he must, how his inability to do these things <u>specifically</u> prejudiced his defense. Our precedent establishes that an appellant cannot demonstrate prejudice with "a general allegation of 'we

were not prepared,'" United States v. LaRouche, 896 F.2d 815, 825 (4th Cir. 1990), or "post-hoc assertions by counsel that given more time something might have turned up," id. (quoting United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir. 1980)) (internal quotation marks omitted). Even at oral argument, with the benefit of hindsight, Dr. Saoud could identify no specific source of prejudice.

See Unites States v. Saoud, 595 F. App'x 182, 186 (4th Cir. 2014). The Supreme Court of the United States denied Saoud's petition for a writ of certiorari on April 27, 2015 (Dkt. No. 1 at 2).

**C.   § 2255 Petition**

On April 27, 2016, Saoud filed his § 2255 Petition in this Court, raising one ground for relief (Dkt. No. 1). He argues that "[t]he inability of counsel to prepare for trial following the second superseding indictment where nine new counts were added, bringing forth new legal theories with new discovery, just eight calender days before trial," warrants a presumption of prejudice under United States v. Cronic, 466 U.S. 648 (1984). Saoud asks the Court "to grant a petition for a writ of habeas corpus, and grant a new trial or any relief available under Johnson v. United States, 135 S. Ct. 2551 (2015)" (Dkt. No. 1 at 4-5).[3]

---

[3] This is Saoud's only reference to Johnson v. United States, 135 S. Ct. 2551 (2015), which is in no way applicable to the question presented by the Petition.

## ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 6] AND DENYING AND DISMISSING § 2255 PETITION [DKT. NO. 1]

Pursuant to 28 U.S.C. § 636 and the local rules of this District, the Petition was referred to the Honorable James E. Seibert, United States Magistrate Judge, for initial review. In a report and recommendation ("R&R") entered on September 26, 2017, Magistrate Judge Seibert recommended that the Court deny the Petition (Dkt. No. 6). First, he reasoned that Saoud's ineffective assistance claim is precluded because the same issues were presented on direct appeal. Id. at 8. Second, he concluded that the circumstances of Saoud's case do not warrant a presumption of prejudice. Id. at 8-10. Saoud filed objections to the recommendation on October 11, 2017 (Dkt. No. 7).

## II. APPLICABLE LAW

Under 28 U.S.C. § 2255(a), a prisoner may move his sentencing court "to vacate, set aside or correct" a sentence if he claims it "was imposed in violation of the Constitution or laws of the United States." A prisoner's sentence violates the Constitution if he was deprived of his Sixth Amendment right to the effective assistance of trial counsel. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 6]
AND DENYING AND DISMISSING § 2255 PETITION [DKT. NO. 1]**

To satisfy the "performance prong," a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. There is a "strong presumption" that the conduct at issue is reasonable on the "wide range of reasonable professional assistance." United States v. Rangel, 781 F.3d 736, 742 (4th Cir. 2015) (quoting United States v. Higgs, 663 F.3d 726, 739 (4th Cir. 2011)). Under the "prejudice prong," the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "There must be 'a probability sufficient to undermine confidence in the outcome' of the trial," but "a defendant is not required to establish that 'counsel's deficient conduct more likely than not altered the outcome of the case.'" Rangel, 781 F.3d at 742 (quoting Strickland, 466 U.S. at 693-94).

Nonetheless, in United States v. Cronic, "the Supreme Court held that there are certain situations where the reliability of a trial becomes so questionable that the defendant need not show that he was actually prejudiced. Instead, prejudice is presumed." United States v. Ragin, 820 F.3d 609, 612 (4th Cir. 2016). The presumption of prejudice applies in three "limited contexts":

8

> First, prejudice is presumed when the defendant is completely denied counsel "at a critical stage of his trial." Second, prejudice is presumed if there has been a constructive denial of counsel. This happens when a lawyer "fails to subject the prosecution's case to meaningful adversarial testing," thus making "the adversary process itself presumptively unreliable." Third, the [Supreme] Court identified certain instances "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."

Id. at 617-18 (internal citation omitted). If a defendant can make the "extremely high showing" necessary to warrant a presumption of prejudice, he necessarily establishes that there was a "structural error" in his trial. Id. at 618 (concluding that a presumption of prejudice was warranted when the defendant's trial attorney slept during "substantial" portions of the trial).

### III. DISCUSSION

When reviewing a magistrate judge's R&R, the Court must review de novo the portions to which an objection is timely made. 28 U.S.C. § 636(b)(1)(c). Having conducted a de novo review of the record and Saoud's objections, the Court concludes that the

Petition is without merit because Saoud is not entitled to a presumption of prejudice under <u>United States v. Cronic</u>.[4]

The facts of <u>Cronic</u> itself illustrate that Saoud has not made the "extremely high showing" necessary to establish a presumption of prejudice in this case. In <u>Cronic</u>, the defendant was charged with mail fraud totaling $9,400,000. When his retained attorney withdrew, "[t]he court appointed a young lawyer with a real estate practice to represent [the defendant], but allowed him only 25 days for pretrial preparation." <u>Cronic</u>, 466 U.S. at 649. Although the defendant was convicted, "the Court of Appeals reversed the conviction because it inferred that [the defendant's] constitutional right to the effective assistance of counsel had been violated." <u>Id.</u> at 652. The court of appeals based its inference on five factors: "(1) [T]he time afforded for

---

[4] The R&R also concluded that Saoud's ineffective assistance of counsel claim is precluded because the issue was decided on direct appeal (Dkt. No. 6 at 8) (citing <u>United States v. Roane</u>, 378 F.3d 328, 397 (4th Cir. 2004)), but the Court must respectfully disagree. Presumptive prejudice under <u>Cronic</u> is a structural error, which warrants relief "without any inquiry into the existence of actual prejudice." <u>Ragin</u>, 820 F.3d at 618. The Fourth Circuit rejected Saoud's argument on direct appeal because he failed to establish how the Court's denial of his motion to sever or continue "<u>specifically</u> prejudiced his defense." <u>Saoud</u>, 595 F. App'x at 186. Given that no such showing is required under <u>Cronic</u>, the Fourth Circuit's analysis on direct appeal does not preclude the Sixth Amendment question presented by Saoud's § 2255 Petition.

investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." Id.

On certiorari, the Supreme Court acknowledged that a lack of preparation time may result in a presumption of prejudice. Id. at 660 (citing Powell v. Alabama, 287 U.S. 45 (1931)). It further reasoned, however, that "every refusal to postpone a criminal trial will not give rise to such a presumption." Id. at 661 (citing Avery v. Alabama, 308 U.S. 444 (1940)). Rather "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." Id. at 662.

In light of this standard, the Court stated that "[n]either the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case in 25 days."

> In this case, the time devoted by the Government to the assembly, organization, and summarization of the thousands of written records evidencing the two streams of checks flowing between the banks in Florida and Oklahoma unquestionably simplified the work of defense counsel in identifying and understanding the basic character of the defendants' scheme. When a series of repetitious transactions fit into a single mold, the number of written exhibits that are needed to define the

>pattern may be unrelated to the time that is needed to understand it.

Id. at 663-64. Furthermore, because the authenticity of the records was not in dispute, "25 days to consider the question whether those facts justify an inference of criminal intent [was] not so short that it even arguably justifie[d] a presumption that no lawyer could provide the [defendant] with the effective assistance of counsel required by the Constitution." Id. at 665. Therefore, the Supreme Court reversed the court of appeals, holding that the facts did not warrant a presumption of prejudice. Id. at 666.

Likewise, Saoud's "case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel." Id. Although Saoud's trial attorney stated that he was "completely unprepared" to address the new charges (Dkt. No. 1 at 4-5), the record does "not demonstrate that counsel failed to function in any meaningful sense as the Government's adversary" or constructively was "prevented from assisting the accused during a critical stage of the proceeding." Cronic, 466 U.S. at 659 n.25, 666.

Saoud's trial attorney first appeared in the case in January 2013, just one month following the indictment and five months prior to Saoud's trial (Crim. No. 1:12cr113, Dkt. No. 19). Trial counsel

was experienced in criminal matters and had five months to familiarize himself with the charges and facts of the case. As noted, the nine additional counts of the second superseding indictment arose out of the same course of conduct alleged in the original indictment. Because the authenticity of the few underlying billing records was not disputed, eight days was sufficient for Saoud's attorney to consider the new allegations and devise a strategy to counter the Government's theory. See Cronic, 466 U.S. at 665.

Indeed, the substance of Dr. Swisher's testimony demonstrates that a competent attorney could have been effective. Cf. Raqin, 820 F.3d at 619. The testimony comprised just 30 pages of the 1,743-page trial transcript. Dr. Swisher testified that he agreed to be Saoud's laboratory director for the limited purpose of "supervis[ing] the policies, procedures, the lab certification, [and] mak[ing] sure the staff [were] meeting qualifications" (Crim. No. 1:12cr113, Dkt. No. 127 at 21-22). Dr. Swisher was not a dermatologist, and he "never gave permission for [his] name or numbers to be used for billing," nor supervised any providers at Saoud's practice. Id. at 28, 30. When shown billing records that bore his name as the provider, Dr. Swisher testified unequivocally that he had not provided the services. Id. at 31-36. On cross-

examination, Saoud's attorney utilized the Government's exhibits and elicited Dr. Swisher's admission that he did not know whether Saoud himself was responsible for fraudulently placing Dr. Swisher's name in the billing records. Id. at 44-46.

Based on these circumstances, the Court finds that whether Saoud's attorney effectively addressed the new allegations is "perfectly amenable to analysis under the Strickland prejudice test," and that the relatively short window of preparation time did not effectively deprive Saoud of counsel. Ragin, 820 F.3d at 619 (quoting Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996)). The presumption of prejudice is meant to apply only in cases where "prejudice 'is so likely that case-by-case inquiry . . . is not worth the cost,'" James v. Harrison, 389 F.3d 450, 455 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 692). This is not such a case. Tellingly, Saoud has not even attempted to identify an actual deficiency in counsel's performance that would have prejudiced his defense. Therefore, the Petition must be denied.

## IV. CONCLUSION

For the reasons discussed the Court:

**1)** **ADOPTS** the R&R (Civil No. 1:16cv73, Dkt. No. 6; Crim. No. 1:12cr113, Dkt. No. 287); and

14

**2)** **DENIES** the Petition (Civil No. 1:16cv73, Dkt. No. 1; Crim. No. 1:12cr113, Dkt. No. 227), and **DISMISSES** this case **WITH PREJUDICE.**

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such a case. If the court denies the certificate, "a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Saoud has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003). Upon review of the record, the Court concludes that

SAOUD v. USA                                                         1:16CV73

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 6]**
**AND DENYING AND DISMISSING § 2255 PETITION [DKT. NO. 1]**

Saoud has failed to make the requisite showing, and **DENIES** a certificate of appealability.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: April 13, 2018.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE